```
                           UNITED STATES DISTRICT COURT
                           SOUTHERN DISTRICT OF FLORIDA

                           CASE NO. 09-61783-Civ-COHN
                                  (08-60131-Cr-COHN)
                           MAGISTRATE JUDGE P. A. WHITE
```

ARTURY O. DE LUNA SEIJAS,    :

    Movant,                  :

v.                           :        **REPORT OF MAGISTRATE**
                                                  **JUDGE RECOMMENDING**
UNITED STATES OF AMERICA,    :        **THAT MOTION BE GRANTED**

    Respondent.              :
_____

## I. Introduction

This matter is before the Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his sentence for aggravated identity theft, following a guilty plea entered in Case No. 08-Cr-60131-Cohn.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the motion (Cv-DE# 1), the government's response (Cv-DE# 8), the movant's memorandum of law/reply (Cv-DE# 16), the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal proceedings.

## II. Claims

The movant argues that the United States Supreme Court decision in Flores-Figueroa v. United States, ___ U.S. ___, 129

S.Ct. 1886 (2009) invalidates his sentence because he was unaware that the means of identification that he possessed belonged to another person. (Cv-DE#1:3). He further alleges that as a result thereof, he was unaware of every element of the offense and therefore his plea was unintelligently and unknowingly entered. (Cv-DE#1:11).

### III. Procedural History

The relevant procedural history of the underlying criminal case is as follows. On May 13, 2008, the United States Attorney's Office filed an Information charging the movant with access device fraud, in violation of 18 U.S.C. §§1029(a)(2) and 2 (Count 4); possession of fifteen or more unauthorized and counterfeit access devices, in violation of 18 U.S.C. §§1029(a)(3), (c)(1)(A)(I) and 2 (Count 5) and aggravated identity theft, in violation of 18 U.S.C. §§1028A(a)(1) and 2 (Count 6). (Cr-DE#1).

On June 30, 2008, pursuant to a negotiated plea entered into with the government, the movant pleaded guilty as charged. (Cr-DEs#33,37).

A PSI was thereafter prepared in anticipation of sentencing wherein the probation officer determined the movant's base offense level was 6. (PSI¶29).[1] However, because the loss was more than $200,000 but not more than $400,000, the offense level was increased by 12 levels. (PSI¶30). Moreover, because the offense involved the production or trafficking of any unauthorized device or counterfeit access device, the offense level was increased by another two levels. (PSI¶31). Since the movant clearly demonstrated

---

[1]Since Count 6 is subject to a statutorily required consecutive sentence of two years, it is not subject to grouping with Counts 4 and 5. (PSI¶28).

acceptance of responsibility for his offense, his base offense level was decreased by three levels. (PSI¶¶37-38). His total offense level was set at 17. (PSI¶39). The PSI further revealed the movant had zero criminal history points and a criminal history category of I. (PSI¶42). Based on a total offense level of 17 and a criminal history category of I, the guideline imprisonment range was 24 to 30 months. (PSI¶86). As to Count 6, a term of imprisonment shall run consecutive to any other term of imprisonment, as required by statute. (Id.).

The movant proceeded to sentencing on September 26, 2009, wherein he was sentenced to 6 months imprisonment as to Counts 4 and 5 to run concurrently with each other, followed by 3 years of supervised release and $200 special assessment. (Cr-DEs#55,57). Likewise, he was sentenced to 24 months imprisonment as to Count 6 to run consecutively to Counts 4 and 5, followed by 1 year of supervised release and $100 special assessment. (Id.). Finally, the movant was held responsible for restitution in the amount of $309,636.31. (Id.). The Clerk of Court entered judgment on September 30, 2008. (Cr-DE#28). No direct appeal ensued. The judgment of conviction in the underlying criminal case became final at the latest on October 15, 2008, ten days after the entry of judgment (Cr-DE#57), when time expired for filing a notice of appeal.[2] At the latest, the movant was required to file this motion to vacate within one year from the time the judgement became final, or no later than October 15, 2009. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986). The movant signed and executed this motion in

---

[2]Where, as here, a defendant does not pursue a direct appeal, the conviction becomes final when the time for filing a direct appeal expires. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). The time for filing a direct appeal expires ten days after the judgment or order being appealed is entered. Fed.R.App.P. 4(b)(1)(A)(I). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed. R. App. P. 4(b)(6).

On December 1, 2002, Fed.R.App.P. 26; which contains the rules on computing and extending time, was amended so that intermediate weekends and holidays are excluded from the time computation for all pleadings due in less than 11 days.

3

on November 4, 2009.³ (Cv-DE#1). Thus, it appears as if this motion to vacate was untimely filed.

However, on May 9, 2009, the Supreme Court rendered its decision in <u>Flores-Figueroa v. United States</u>, 129 S.Ct. 1886 (2009), establishing that, to be guilty of aggravated identity theft, a defendant must know that the means of identification belonged to another person. Approximately six months after the Supreme Court decision issued in <u>Flores-Figueroa</u>, on November 4, 2009 2010,⁴ the movant filed a motion to vacate pursuant to 28 U.S.C. §2255, alleging that his conviction should be overturned because of the United States Supreme Court's decision in <u>Flores-Figueroa</u>.

## IV. <u>Timeliness</u>

The government correctly concedes this federal habeas corpus motion is timely filed. (Cv-DE#8:5,FN2). Generally, §2255 motions must be filed within one-year of "the date on which the judgment of conviction becomes final."⁵ 28 U.S.C. §2255(f)(1). However, in this

---

³A review of the movant's motion to vacate shows that although he signed the petition under penalty of perjury, he nonetheless failed to provide a signature date. Notwithstanding, because the motion reflects it was received by the Clerk of Court on September 17, 2009, prior to the expiration of the one year statute of limitations, it is deemed timely.

⁴This Court applies the "mailbox rule" and deems the motion to vacate "filed on the date it was delivered to prison authorities for mailing." <u>Alexander v. Sec'y Dep't of Corr.</u>, 523 F.3d 1291, 1294 n. 4 (11th Cir. 2008). <u>See also Adams v. U.S.</u>, 173 F.3d 1339 (11th Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

⁵Section 2255(f) sets a one-year limitations period running from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant is prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4

case, the movant's motion is timely under §2255(f)(3), which allows motions to be filed within one year from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." The Supreme Court decided <u>Flores-Figueroa</u> on May 4, 2009, so the movant's motion, filed on November 4, 2009, is timely filed as long as <u>Flores-Figueroa</u> can be retroactively applied to his claim. The government concedes that <u>Flores-Figueroa</u> is to be applied retroactively and this Court agrees. (Cv-DE#8:5,FN2); <u>see also</u> <u>Teague v. Lane</u>, 489 U.S. 288, 311 (1989). While the Supreme Court is the only authority capable of creating a new right, for a first §2255 motion, even a district court may determine retroactive applicability. <u>See</u> <u>Dodd v. United States</u>,[6] 365 F.3d 1273, 1280-81 (11th Cir. 2004), <u>citing</u>, <u>Garcia v. United States</u>, 278 F.3d 1210, 1213 n. 4 (11th Cir.). <u>cert. den.</u>, 537 U.S. 895 (2002). <u>See also</u> <u>United States v. Swinton</u>, 333 F.3d 481, 487 (3d Cir.)("We conclude-and the parties agree-that the statute of limitations provision of §2255 allows district courts and courts of appeals to make retroactivity decisions."), <u>cert. den.</u>, 540 U.S. 977 (2003). Since the Supreme Court's ruling in <u>Flores-Figueroa</u> constitutes a narrowing of 18 U.S.C. §1028A,[7] as previously construed by the

---

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

[6] In addition to holding that district courts may determine retroactivity, the Eleventh Circuit in <u>Dodd</u> also set forth its reasoning in detail regarding when the statute of limitations begins to run under 28 U.S.C. §2255(f)(3).

[7] In <u>Flores-Figueroa</u>, the Supreme Court construed the knowledge element of the aggravated identity theft statute, 18 U.S.C. §1028A. Section 1028A provides a mandatory term of two years in prison for a defendant who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. §1028A. The Court held that in order to establish a violation of §1028A, the government must show that the defendant knew that the means of identification which was used by the defendant belonged to another person. <u>Flores-Figueroa v. United States</u>, 129 S.Ct. 1886, 1888, 1894 (2009) In other words, mere proof that the means of identification used by a defendant, such as a social security number or resident alien card, was assigned to an actual person is in itself insufficient to establish a violation of §1028A. Moreover, the Supreme Court further found that the term "knowingly" in §1028A(a)(1) applies to each of the subsequent elements of the statute as a matter of ordinary English usage. <u>Id.</u> at 1890-94.

5

Eleventh Circuit's decision in United States v. Hurtado, 508 F.3d 603 (11th Cir. 2007), Flores-Figueroa applies retroactively to cases on collateral review. See Bousley v. United States, 523 U.S. 614, 620-21 (1998).

## V. Factual History

During the change of plea hearing, the movant acknowledged the following factual proffer:

> Had the United States proceeded to trial, the government would have proven beyond a reasonable doubt that on March 21st, 2008, Stuart police were dispatched to a Wal-Mart in reference to a fraud in progress wherein two males, later identified as Angel Ulloa-Miguel and Artury O De Luna Seijas, were suspected of utilizing fraudulent credit cards to purchase merchandise.
>
> According to loss prevention officers, both suspects were observed entering the store together but later separated and purchased various items utilizing separate cash registers. Each suspect utilized Discover credit cards, and each asked for $60 cash back with each transaction.
>
> Immediately after their purchases, both suspects met back up and attempted to purchase laptop computers. When those attempted purchases were declined, they both walked out of the store together towards a 2007 four-door silver Toyota Camry.
>
> At that point both suspects were taken into custody by loss prevention officers, questioned, and ultimately placed under arrest by Stuart police.
>
> Seijas who admitted his real name to officers was searched incident to arrest. And inside his wallet, officers discovered a counterfeit Georgia driver's license bearing the name of Jorge Cestari as well as four Discover[] credit cards all bearing the name Jorge Cestari.
>
> Ultimately a search warrant was secured for the vehicle

>issued, executed, and inside officers discovered 14 additional Discover credit cards bearing the name Jorge Cestari as well as numerous receipts documenting multiple purchases of items including computers and other merchandise. Officers also discovered a Bank of America debit card, a resident alien card, and a Dominican Republic ID card all in the name of Artury O De Luna Seijas.
>
>Additionally four laptop computers were found inside the trunk, two of which had the names Jorge Cestari written on the outside and two of which bore the name Albre Dipre. These computers matched the credit cards and the receipts found inside the vehicle.
>
>Upon a search incident to arrest of suspect Angel Ulloa-Miguel, officers discovered counterfeit Georgia identification bearing the name Albre Dipre as well as six counterfeit and fraudulent Discover credit cards. And inside the vehicle, officers found 13 additional fraudulent Discover credit cards bearing the name Albre Dipre.
>
>Based upon the above, service agents identified and located all of the purchases which had been made utilizing the fraudulent credit cards located inside this vehicle and were able to determine that Seijas had made approximately $262,847.44 in fraudulent purchases. And Miguel had made in excess of $35,000 in fraudulent purchases.
>
>Specifically as alleged in Counts 4 and 6 of the information, on March 21st of 2008, the defendant entered an Office Depot located in Broward County, Florida and attempted and ultimately did purchase a laptop computer valued at $1,091,79 utilizing a credit card ending in 0568 lawfully issued to an individual bearing the initials RB.
>
>RB was ultimately contacted and indicated that at no time did they ever give permission to Mr. Seijas to make purchases utilizing the credit card ending in 0568.

(Cv-DE#18,Ex.1:16-18).

The Court then asked Seijas "do you agree that the facts as stated . . . are true," to which the movant responded "yes." (<u>Id.</u>).

7

## VI. Procedural Default

When a defendant pleads guilty and does not challenge the validity of his plea and resultant sentence on appeal, subsequent challenges are procedurally defaulted in a post-conviction proceeding pursuant to §2255. United States v. Frady, 456 U.S. 152, 167-69 (1982). See also Bousley v. United States, 523 U.S. 614, 620; Parks v. United States, 832 F.2d 1244, 1245-46 (11th Cir. 1987). If the defendant has procedurally defaulted and wants to collaterally attack his conviction or sentence on the basis of a retroactive Supreme Court decision, the defendant must demonstrate either 1) cause for the default and actual prejudice or 2) actual innocence. Frady, supra. See also Bousley, 523 U.S. at 622; Campino v. United States, 968 F.2d 187, 189-90 (2d Cir. 1992)("[A] procedural default of even a constitutional issue will bar review under Section 2255, unless the petitioner can meet the 'cause and prejudice' test"). The cause and prejudice standard requires the movant to show not only that "some objective factor external to the defense" impeded his efforts to raise the issue earlier, Coleman v. Thompson, 501 U.S. 722, 753 (1992), but also that the error he alleged "worked to his actual and substantial disadvantage." Frady, 456 U.S. at 170. "To establish actual innocence, the petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley 523 U.S. at 623, quoting, Schlup v Delo, 513 U.S. 298, 327-28 (1995). The Supreme Court clarified that "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. The Court concluded, "[I]f, on remand, petitioner can make that showing, he will then be entitled to have his defaulted claim of an unintelligent plea considered on its merits." Id. at 624.

The movant has not established cause for the default, although

the law may have been settled against the movant in his circuit on the question. "[T]he futility of presenting an objection . . . cannot alone constitute cause for a failure to object at trial." Engle v. Isaac, 456 U.S. 107, 130 (1982). See also Bousley, 523 U.S. at 623. The movant has further made no showing of prejudice. Thus, he can only attack his convictions and/or sentences by proving that he is innocent of the offense or sentence. Here, the movant meets Bousley's actual innocence exception to the Frady procedural bar rule.[8] In Bousley, the Supreme Court extended the actual innocence exception to the procedural bar rule to cases where the defendant had pled guilty but a post-conviction change in the law potentially shows the conviction and punishment are for an act that the law does not make criminal. Such is the situation herein.

## VII. Discussion

The movant argues that the United States Supreme decision in Flores-Figueroa v. United States, ___ U.S. ___, 129 S.Ct. 1886 (2009) invalidates his convictions and sentences, because he did not know that the means of identification that he possessed belonged to someone else. (Cv-DE#1:3). He further alleges because he was unaware of every element of the offense, his plea was unintelligently and unknowingly entered. (Cv-DE#1:11).

Specifically, the movant asserts that Flores-Figueroa, supra,

---

[8] It is noted that "[a]ctual innocence is not itself a substantive claim, but rather serves only to lift the procedural bar caused by [movant's] failure timely to file his §2255 motion." See United States v. Montano, 398 F.3d 1276, 1284 (11th Cir. 2005)(attacking conviction based on guilty plea). But see House v. Bell, 547 U.S. 518, 555 (2006)(declining to reach issue of whether free-standing actual innocence claim is possible where post-trial new DNA evidence in capital case met stringent showing required by actual innocence exception to procedural default rule); Herrera v. Collins, 506 U.S. 390, 417 (1993)(assuming for sake of argument that in a capital case a showing of actual innocence after trial would render the execution of a defendant unconstitutional, and warrant federal habeas review if no state avenue of relief was open to him); Mize v. Hall, 532 F.3d 1184, 1196, 1198 (11th Cir. 2008)(petitioner sentenced to death failed post-trial to establish actual innocence exception to procedural default doctrine and a fortiori could not establish "a freestanding actual innocence claim (if such a claim in fact exists).").

9

applies to his case in that he obtained the information from co-defendant Melendez and no evidence exists to establish he had any prior knowledge that the identification used belonged to a real person. (Cv-DE#1:14). In support thereof, he asserts that the credit cards he received could have belonged either to a real person, to a company or corporation, or have been a gift card, and therefore his conviction and sentence under 18 U.S.C. §1028A should be vacated. (Id.). Moreover, he asserts there is no evidence that the numbers on the magnetic band of the credit card matched the embossed names on the actual card because the names were made up. (Id.:15).

The facts as stated in the PSI reflects that on or about March 21, 2008, Angel Ulloa-Miguel and Artury O. DeLuna-Seijas committed access device fraud, along with aggravated identity theft. (PSI¶11).

The investigation was part of Operation Bright Idea, led by the USSS, wherein criminals were utilizing counterfeit and fraudulent Discover credit cards to purchase millions of dollars worth of merchandise and electronics. (PSI¶12). During the investigation, related defendant, Noel Melendez, was also identified as a member of the organization. (Id.).

Melendez utilized the credit card numbers himself to shop, by arranging for another individual to encode counterfeit credit cards with the information he provided, or would produce the counterfeit credit cards himself using equipment found inside his residence at the time of his arrest. (PSI¶13). Melendez also transmitted stolen credit card numbers that he had purchased himself over the Internet to additional subordinate shoppers under his direction, to include DeLuna-Seijas and Ulloa-Miguel, who would also obtain fictitious identification documents which matched the names embossed on the

10

re-encoded credit cards. (Id.). After the subordinate shoppers obtained merchandise utilizing the unauthorized credit cards, they would take the merchandise back to Melendez who would take the items to a "fence" who would resell the items and pay Melendez a portion of their sale price. (Id.). Defendants DeLuna-Seijas and Ulloa-Miguel were identified as "shoppers" for Melendez. (Id.).

On March 21, 2008, Stuart Police were dispatched to a Wal-Mart in reference to a fraud in progress, wherein two males, later identified as Angel Ulloa-Miguel and Artury O. DeLuna-Seijas, were suspected of utilizing fraudulent credit cards to purchase merchandise. (PSI¶14). According to loss prevention officers, both suspects were observed entering the store together, but they later separated and purchased various items utilizing separate cash registers. (Id.). Both suspects utilized Discover credit cards, and both asked for $60 cash back. (Id.). Immediately after their purchases, the suspects met and attempted to purchase laptop computers. (Id.). When these attempted purchases were declined, both men walked out of the store together toward a 2007 four door, silver Toyota Camry. (Id.). Loss prevention officers took the men into custody and were subsequently placed under arrest by police. (Id.).

Specifically, on March 21, 2008, Angel Ulloa-Miguel entered an Office Depot store located in Broward County, Florida and utilized a fraudulent Discover credit card, which lawfully belonged to M.W. to purchase a laptop computer and other merchandise valued at $1,129.71. (PSI¶15). The computer was seized at the time of Ulloa-Miguel's arrest. (Id.). That same day, Artury O. DeLuna-Seijas also entered an Office Depot in Broward County, Florida and utilized a fraudulent credit card, which lawfully belonged to S.M., to purchase a laptop computer and other merchandise valued at $1,202.44. (Id.). Neither victim gave these individuals permission

to utilize their credit card account numbers. (Id.).

DeLuna-Seijas admitted his true name to officers and was searched incident to his arrest. (PSI¶16). Inside his wallet, officers discovered a counterfeit Georgia driver's license, bearing the name Jorge Cestari, as well as four Discover cards, all bearing the name of Jorge Cestari. (Id.). A search warrant was secured for the Camry, and inside officers discovered 14 additional Discover credit cards bearing the name Jorge Cestari. (Id.). Additionally, officers found numerous receipts documenting multiple purchases of items including computers and other merchandise. (Id.). Officers also discovered a Bank of America debit card, a resident alien card, and a Dominican Republic identification all in the name of Artury O. DeLuna-Seijas. (Id.). Four laptop computers were found inside the trunk of the Camry. (Id.). Two of the computers had the name of Jorge Cestari written on the outside. (Id.). The other two laptops reflected the name of Albre Dipre. (Id.). These computers matched the credit cards and receipts found inside the vehicle. (Id.).

Upon a search incident to the arrest of Angel Ulloa-Miguel, officers found a counterfeit Georgia identification bearing the name Albre Dipre, as well as six counterfeit and fraudulent Discover credit cards. (PSI¶17). Inside the vehicle, officers found 13 additional fraudulent Discover credit cards bearing the name Albre Dipre. (Id.).

Based on the foregoing information, USSS agents thereafter located and identified all fraudulent purchases which had been made utilizing the fraudulent credit cards located inside the vehicle. (PSI¶18). According to the government, the sole victim of this offense is Discover Financial Services. (Id.). According to a spreadsheet provided by Discover Financial Services, DeLuna-Seijas

used about 85 fraudulent credit card numbers with total charges of $262,847.44. (Id.). Spreadsheets provided by Discover Financial Services reflect Ulloa-Miguel used or attempted to use 84 fraudulent credit card numbers with total charges of $46,788.87. (Id.).

According to the government, there was no evidence Ulloa-Miguel participated in the purchases made by DeLuna-Seijas in the amount of $262,847.44. (PSI¶19). Therefore, Ulloa-Miguel was held accountable for a total loss of $46,788.87 to Discover Financial Services. (Id.). DeLuna-Seijas was present during the purchases made by Ulloa-Miguel, therefore, he was held accountable for the entire loss to the Discover Financial Services in the amount of $309,636.31. (Id.).

The loss amount associated with the credit cards numbers located on Melendez's computer is in excess of $1 million dollars, resulting in monetary losses to approximately 40 victim credit card issuing banks. (PSI¶20).

Title 18, United States Code, Section 1028A(a)(1) prohibits anyone from, during and in relation to, certain enumerated felonies, knowingly transferring, possessing, or using, without lawful authority, a means of identification of another person. 18 U.S.C. §1028A(a)(1). As briefly discussed supra, at the time the movant entered his guilty plea, proceeded to sentencing and during the time in which he could file his direct appeal, the law in the Eleventh Circuit did not require the government to prove that he knew the means of identification used belonged to another person to prove a violation of 18 U.S.C. §1028A(a)(1). Hurtado, 508 F.3d 603, 608-09 (11th Cir. 2007). However, after the time expired in which the movant could file his direct appeal, the Supreme Court abrogated Hurtado and found that §1028A(a)(1) required the

government to prove that "the defendant knew the means of identification at issue belonged to another person." <u>Flores-Figueroa</u>, 129 S.Ct. at 1894.[9]

According to the government, it has presented evidence sufficient to establish the "knowledge" element required in <u>Flores-Figueroa</u>, arguing that the change of plea's factual proffer demonstrates the movant used a credit card which lawfully belonged to an individual bearing the initials R.B. and the movant admitted that he did not have authority to utilize the credit card account numbers. (Cv-DE#8:6). Moreover, the government asserts that the movant's acceptance of responsibility statement found in his PSI clearly demonstrates he knew that the credit cards he was fraudulently using belonged to another real person. (<u>Id.</u>:6).[10]

---

[9] To establish a violation of §1028A(a)(1), "the government must prove that the defendant: (1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful authority; (4) during and in relation to a felony enumerated in §1028A(c)." <u>United States v. Hurtado</u>, 508 F.3d 603, 606-07 (11th Cir. 2007)(footnote omitted), abrogated on other grounds by <u>Flores-Figueroa</u>, 129 S.Ct. 1886. As indicated <u>infra</u> in note 8, in <u>Flores-Figueroa</u>, the Supreme Court further held that in order to establish a violation of the "aggravated identity theft" statute, 18 U.S.C. 1028A(a)(1), which provides a mandatory term of two years of imprisonment, the government must show that the defendant knew that the means of identification belonged to another person. <u>Flores-Figueroa v. United States</u>, 129 S.Ct. 1886, 1888, 1894 (2009). Mere proof that the means of identification used by a defendant was assigned to an actual person is in itself no longer sufficient to make out a violation of the statute. The Court further held that the introductory term "knowingly" in Section 1028A(a)(1) applied to each of the subsequent elements of the statute. <u>Id.</u> at 1890-94.

[10] The movant's statement, provided to the probation officer, wherein he admitted his involvement in the offense is as follows:

> My name is Arturo De Luna. On or about March 21, 2008, in Broward, Palm Beach, and Martin Counties, I willfully and intentionally used, without lawful authority, an identification card belonging to another person in violation of Title 18, United States Code, Section 1029. That day, I knowingly and with intent to defraud, used an unauthorized access device, that is, a Discover credit card ending in 0568 established in the name of an individual with the initials R.B. and by such conduct did obtain things of value, that is, merchandise, aggregating at least $1,000 during a one year period, such use affecting interstate commerce, in violation of Title 18, United States Code, Section 1029(a)(2). In addition, on or about the same time, I was in possession of fifteen or more counterfeit access devices, affecting interstate commerce, in violation of Title 18, United States Code, Section 1029(a)(3), (c)(1)(A)(i) and 2.
>
> I regret my having participated in such despicable acts affecting individuals and in violation of the laws of the United States but accept full responsibility for my actions.

Unfortunately, the government's argument fails to establish that the movant knew that the specific means of identification in question, was real at the time he misused it. There is no direct evidence that the movant knew that the credit cards did in fact belong to a real person (R.B), it was not stipulated that the movant knew that R.B. existed when he used the information contained within the documents to obtain the driver's license. See United States v. Gaspar, 344 Fed. Appx. 541 (11th Cir. 2009); United States v. Morgan, 201 WL 1714705 (E.D. PA 2010). The government did not include this element in the factual proffer given that Hurtado did not require it. Id. Consequently, there is no evidence that the movant ever met or spoke with R.B. or that the person he purchased the documents from mentioned that R.B. was a real person. Id.

Intent is not readily proven from the circumstances of the case given that the movant did not commit "classic" identity theft. Flores-Figueroa, 129 S.Ct at 1893. He did not search another person's trash, hack into someone's computer account, or pretend to be someone else to obtain personal information. Id. Rather, the movant acquired the information and later agreed, after the fact, that the information identified a real person. His agreement at the time of his guilty plea that the credit cards were issued to a "real person" is not the same as an admission that the movant knew at the time that he was misusing the credit cards that they belonged to a real person. The government did not present evidence that the movant met R.B. or even knew who R.B. was. Thus, there was no direct evidence in the record that the movant knew the information belonged to a real person when he misused them.

Contrary to the government's arguments, as Flores-Figueroa

---

(PSI¶26).

demonstrates, an individual can successfully use information that does not belong to a real person in order to secure benefits. Flores-Figueroa, 129 S.Ct. 1889. The movant appears to have acquired credit cards from Melendez and then obtained fictitious identification documents matching the names embossed on the re-encoded credit cards. (PSI¶13). See Gaspar, 344 Fed. Appx. 541 (11th Cir. 2009); Morgan, 201 WL 1714705, *12; Flores-Figueroa, 129 S.Ct. at 1893. Because the movant's plan to use a credit card did not necessarily require the misuse of authentic means of identification/information, it cannot be inferred that the movant knew at the time he misused the information that they belonged to a real person. Id. Instead, the movant's misuse of the information occurred in circumstances where it might not have mattered to the movant whether the credit card was that of a real person. Id.; see also Soto v. United States, 2010 WL 148235 (S.D. Fla. 2010); citing United States v. Perez, 2009 WL 3059063, *1 (11th Cir. 2009)

In sum, the government has not established that there was a factual basis in the record to conclude that the movant knew at the time he misused R.B.'s credit card that it belonged to a real person. Furthermore, no inference can be drawn from the circumstantial evidence presented by the government (see Cv-DE#8:6) that the movant knew it belonged to a real person or that the movant's plan to use the credit card required information from a real person.

Moreover, the movant's argument that he was unaware of every element of the offense and therefore his plea was unintelligently and unknowingly entered, is also meritorious. (Cv-DE#1:11). See Bogan v. United States, 2009 WL 3762114 (S.D. Fla. 2009); see also United States v. Ochoa-Gonzalez, 598 F.3d 1033, 1036-37 (8th Cir. 2010). A guilty plea is only valid to the extent it was made voluntarily and intelligently. Ochoa-Gonzalez, at 1036; citing

16

Bousely, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Federal Rule of Criminal Procedure 11(b)(1)(G) requires that a defendant be adequately informed of and understand "the nature of each charge to which the defendant is pleading." Accordingly, a plea is not intelligent unless a criminal defendant first receives notice of the true nature of the charge against him. See Id.:1036-37. After a review of the factual proffer presented during the change of hearing, supra, neither the movant, nor his attorney nor the court understood that his knowledge that the credit cards belonged to another person was an essential element of aggravated identity theft under 18 U.S.C. §1028A. Id. at 1038. Therefore, the movant's plea was not intelligent and is therefore constitutionally invalid.

In light of all the evidence, it is more likely than not that no reasonable juror would have convicted the movant of aggravated identity theft. Because the record is devoid of factual evidence that the movant knew that the credit cards information he used belonged to an actual person, as required for a violation and conviction under 18 U.S.C. §1028A, the actual innocence exception established in Bousely, supra, applies.  Accordingly, the movant's conviction for aggravated identity theft should be vacated.

### VIII. Conclusion[11]

It is therefore recommended that: (1) this motion to vacate be granted as to the claims raised herein; (2) that his conviction as to Count 6 for aggravated identity theft be vacated in conformity with the holding in Flores-Fiqueroa; and, (3) that the movant be re-sentenced accordingly.

---

[11]Because the report recommends that the movant's motion to vacate should be granted, his request for an evidentiary hearing (Cv-DE#1:17) is hereby moot.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 14th day of October, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Artury O De Luna Seijas, Pro Se
Reg. No. 77699-004
CI McRae Correctional Institution
Inmate Mail/Parcels
P.O. Drawer 30
McRae, GA 31055

Ann Ruth Schultz, AUSA
United States Attorney's Office
99 NE 4th Street
Miami, Florida 33132

Marc Stuart Anton, AUSA
United States Attorney's Office
500 East Broward Boulevard
7th Floor
Fort Lauderdale, FL 33301-3002